COLORADO COURT OF APPEALS 2017COA85

Court of Appeals No. 16CA0295
La Plata County District Court No. 13CV14
Honorable Jeffrey R. Wilson, Judge

Scott R. Larson, P.C., a Colorado professional corporation,

Appellant and Cross-Appellee,

v.

Michael K. Grinnan,

Appellee and Cross-Appellant.

JUDGMENT AFFIRMED IN PART, ORDER VACATED,
AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE WEBB
Booras and Freyre, JJ., concur

Announced June 15, 2017

Holley, Albertson & Polk, P.C., Dennis B. Polk, Denver, Colorado; Recht
Kornfeld, P.C., Heather R. Hanneman, Denver, Colorado, for Appellant and
Cross-Appellee

Burg, Simpson, Eldredge, Hersh & Jardine, P.C., David P. Hersh, Diane
Vaksdal Smith, Nelson Boyle, Jacob M. Burg, Englewood, Colorado, for
Appellee and Cross-Appellant

¶ 1 This attorney fees dispute pits Colo. RPC 1.5(e) — which prohibits referral fees between lawyers in different law firms — against Colo. RPC 1.5(d) — which permits division of attorney fees between lawyers who are not in the same firm, other than in proportion to the work that each performed, only if the lawyers were jointly responsible for the engagement. Exactly what "joint responsibility" means is a novel question in Colorado.

¶ 2 Scott R. Larson, P.C., performed most of the work after the underlying case was referred to the firm. Larson asserts that because the trial court misinterpreted the "joint responsibility" limitation in Colo. RPC 1.5(d)(1), its award of referral fees to appellee and cross-appellant, Michael K. Grinnan, improperly apportioned the contingent fee that arose from settlement of the underlying case. Thus, Larson continues, fees the court awarded to Grinnan for originating the case must be reapportioned to Larson, leaving Grinnan with only the fees that the court awarded him for "actual services performed."

¶ 3 Grinnan, who referred the case to Larson but then acted mostly as a conduit with the clients, responds that because the court made a factual finding, with record support, that he and

1

Larson had joint responsibility for the case, the fees awarded to him did not have to be in proportion to the services that he had performed. Thus, in Grinnan's view, the fee allocation properly compensated him for having originated the case. Still, he further asserts that the court erred in disregarding unrebutted expert testimony as to the percentage of fees that would reasonably and customarily be awarded to a lawyer in his position. He also challenges the court's award of prejudgment interest to Larson and its refusal to award costs to either party.

¶ 4 We vacate the attorney fee award, reject the contentions raised in Grinnan's cross-appeal, and remand the case for additional findings on joint responsibility and possible reconsideration of costs.

## I. Background

### A. Facts

¶ 5 A propane explosion destroyed Tim Kelley's home, seriously injuring Mr. Kelley, his wife, and their daughter. Grinnan, a life-long friend of Mr. Kelley, visited him in the hospital. Mr. Kelley asked Grinnan to represent the family.

¶ 6    Grinnan, a general practitioner with limited experience in personal injury cases, sought and obtained Mr. Kelley's consent to involve Larson.  Larson entered into a contingent fee agreement with the Kelley family.  As relevant to the fee dispute between Larson and Grinnan, this agreement:

- identified Grinnan as "associated counsel";

- stated that Grinnan would be paid a percentage of Larson's fee, "not to exceed 100%"; and

- provided that Larson was responsible for paying case expenses as they were incurred.

Grinnan was not a signatory to this agreement.

¶ 7    On the Kelleys' behalf, Larson brought claims against Creative Plumbing and Heating, AmeriGas Propane, Inc., and Mesa Propane.  Relatively early in the case, and just before Creative Plumbing filed for bankruptcy, its insurer made a policy limits settlement.  From Larson's $333,333 fee on this settlement, he sent Grinnan a check for $50,000.

¶ 8    Litigation continued against AmeriGas and Mesa Propane.  On the morning of the first day of trial, approximately three years after

3

the claims had been filed, AmeriGas settled. At the end of the first trial day, Mesa Propane also settled.

¶ 9 Based on these settlements, the contingent fee agreement entitled Larson to a total fee of $3,216,666.67. Larson had incurred about $300,000 in costs.

## B. Procedural Posture

¶ 10 Larson and Grinnan were unable to agree on how to divide the contingent fee. Shortly before Grinnan filed an attorney's lien, he entered his appearance. The trial court granted Grinnan's request that all attorney fees paid to Larson be deposited in a restricted interest bearing account. The court held an evidentiary hearing. It heard testimony from Scott Larson, Grinnan, and several experts.

## C. Trial Court's Rulings

¶ 11 The trial court entered a detailed, written order allocating the attorney fees.

¶ 12 The court began by finding that "the two attorneys did not reach an agreement as to how the fees would be divided."[1] Then it turned to Colo. RPC 1.5(d)(1). This rule permits "a division of a fee

---

[1] Neither party challenges this finding.

4

between lawyers who are not in the same firm . . . only if: (1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation."

¶ 13 The court declined to divide the fees in proportion to services. Instead, it found that Grinnan had "assumed joint responsibility for the representation of the Kelleys" in two ways. First, by recommending Larson and being named as associated counsel, Grinnan "subject[ed] himself to potential malpractice liability." Second, as to the fee generated by the Creative Plumbing settlement, "by accepting a lesser amount than what [Grinnan] thought he was entitled when Creative settled, [Grinnan] was helping to pay the costs of the litigation."

¶ 14 The court began the fee allocation by finding the one-third contingency to be reasonable and that under Colo. RPC 1.5(d), Grinnan "is entitled to have the Court determine the amount of attorney's fees he is entitled to receive." Then it found as follows:

- Larson benefitted from Grinnan's "referring the case to him," as well as from Grinnan's "initially acting as a go-between for the Kelleys and Mr. Larson."

- "[T]he amount of work performed by Mr. Grinnan was significantly dwarfed by the amount of work performed by Mr. Larson" and other members of his firm.

- "The majority of the value Mr. Grinnan provided was . . . the origination of the case and . . . Mr. Grinnan's close relationship with Mr. Kelley that allowed Mr. Grinnan to explain matters to the Kelleys . . . in a way that they were reassured that the case was proceeding appropriately."

- "Mr. Grinnan provided no other services to Mr. Larson that aided him in the prosecution of the case."

¶ 15    Next, the court acknowledged expert testimony that "common practice in the legal community in the State of Colorado" would give "the attorney who originated the client . . . one-quarter to one-third of the fee." Still, the court drew on "its experience both in private practice and on the bench." It noted "the different amounts of work required to settle as to" Creative Plumbing and "the remaining two defendants."

¶ 16    Then it divided the fees as follows:

- Of the $333,333.34 fee generated by the Creative Plumbing settlement, Grinnan was entitled to 20%, "10% for bringing

6

the case to Mr. Larson and 10% for the actual services he provided."

- Because "Mr. Grinnan's involvement in acting as a go-between became increasingly less necessary and eventually unnecessary," of the $2,883,333.33 fee generated by the AmeriGas and Mesa Propane settlements, Grinnan would receive 12.5%, "10% for originating the case and 2.5% for the actual services" provided.

¶ 17    In a later written order on interest and costs, the court awarded Grinnan prejudgment interest "at the rate of 8% percent from the date the settlement checks were issued" until final judgment entered on the fees allocated to him. However, the court noted that because of the "very limited amount of services" provided by Grinnan, his "claims for attorney's fees are far in excess of what any reasonable attorney would demand." Then it concluded that Grinnan's demand "that 100% of the fees be placed in a restricted account was, as a practical matter, a wrongful withholding," which entitled Larson to interest under section 5-12-102, C.R.S. 2016, on the total amount of fees, less what was awarded to Grinnan.

¶ 18    Finally, the court declined to award costs, finding that neither lawyer "was the prevailing party."

APPEAL

## II.  Remand Is Required to Resolve Joint Responsibility

¶ 19    Whether Grinnan assumed joint responsibility for the case is the heart and soul of this dispute.  If he did not, then only fees proportional to the services that he performed could be awarded to him.  Larson does not dispute that portion of the trial court's fee award.

¶ 20    Larson asserts that Grinnan never assumed joint responsibility because he did not assume responsibility for the representation as a whole.  Ultimately, we conclude, as did the trial court, that Grinnan satisfied one of two components of joint responsibility — assuming financial responsibility.  But remand is necessary for the trial court to determine whether he satisfied the other component — ethical responsibility, on which it made no findings.

### A.  Standard of Review and Legal Framework

¶ 21    We review de novo the trial court's interpretation of a rule of professional conduct, *People v. Hoskins*, 2014 CO 70, ¶ 17 (citing

*People v. Nozolino*, 2013 CO 19, ¶ 9), but will not disturb the court's factual findings unless they have no support in the record, *Perfect Place v. Semler*, 2016 COA 152M, ¶ 19.  On this much, the parties agree.

¶ 22     The Rules of Professional Conduct "establish standards of conduct by lawyers," Colo. RPC Preamble ¶ 20, for the purpose of protecting clients, *Mercantile Adjustment Bureau, L.L.C. v. Flood*, 2012 CO 38, ¶ 15.

¶ 23     When interpreting the Rules, the text of the Rule is authoritative.  Colo. RPC Preamble ¶ 20.  Our supreme court has cautioned: "Comments to the Rules of Professional Conduct do not add obligations to the Rules but merely provide guidance for practicing in compliance with the Rules."  *In the Matter of Gilbert*, 2015 CO 22, ¶ 33.

¶ 24     Even so, our supreme court has sometimes relied extensively on comments.  *See, e.g.*, *Mercantile Adjustment Bureau, L.L.C.*, ¶ 39 ("However, as their accompanying comments make perfectly clear, the ethical rules have developed to nevertheless limit the ability of lawyers to subsidize law suits or administrative proceedings brought on behalf of their clients, on the basis of two countervailing

considerations."). And in *People v. Lincoln*, 161 P.3d 1274, 1280 (Colo. 2007), the court recognized that a comment broadened a rule:

> Rule 1.6(a) states that "[a] lawyer shall not reveal information relating to representation of a client unless the client consents after consultation." However, the comment to this rule states that an attorney may not disclose confidential information, unless authorized or required by other Rules of Professional Conduct or *other law.*

¶ 25    Colo. RPC 1.5 regulates fees lawyers may charge for their work. As relevant here, Rule 1.5(e) prohibits referral fees. Even so, Rule 1.5(d) provides that lawyers may divide a fee under certain circumstances:

> (d) Other than in connection with the sale of a law practice pursuant to Rule 1.17, a division of a fee between lawyers who are not in the same firm may be made only if:
>
> > (1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation;
> >
> > (2) the client agrees to the arrangement, including the basis upon which the division of fees shall be made, and the client's agreement is confirmed in writing; and
> >
> > (3) the total fee is reasonable.

Comment 7 contextualizes paragraph (d):

> A division of fee is a single billing to a client covering the fee of two or more lawyers who are not in the same firm. A division of fee facilitates association of more than one lawyer in a matter in which neither alone could serve the client as well, and most often is used when the fee is contingent and the division is between a referring lawyer and a trial specialist. Paragraph (d) permits the lawyers to divide a fee either on the basis of the proportion of services they render or if each lawyer assumes responsibility for the representation as a whole. In addition, the client must agree to the arrangement, including the share that each lawyer is to receive, and the agreement must be confirmed in writing. Contingent fee agreements must be in a writing signed by the client and must otherwise comply with paragraph (c) of this Rule. Joint responsibility for the representation entails financial and ethical responsibility for the representation as if the lawyers were associated in a partnership. A lawyer should refer a matter only to a lawyer who the referring lawyer reasonably believes is competent to handle the matter. See Rule 1.1.

## B. Discussion

### 1. Representation as a Whole

Larson starts by relying on the phrase in Comment 7 providing that a fee may be divided other than in proportion to the work performed only when each lawyer has accepted joint responsibility

11

for the representation "as a whole." From this phrase, he asserts that three components of joint responsibility flow — adequacy of representation, financial responsibility, and ethical responsibility.

¶ 27    Larson's argument for reading adequacy of representation into the phrase "representation as a whole" falls short for three reasons. First, the phrase does not appear in the text of the rule. *See* Colo. RPC Preamble ¶ 20 (text of the rule is authoritative). Second, the phrase "adequacy of representation" does not appear in Comment 7. Third, the Comment defines "joint responsibility" — not "representation as a whole" — as ethical and financial responsibility. *See* Colo. RPC 1.5 cmt. 7.

¶ 28    As well, focusing on representation "as a whole" obscures a more instructive inquiry. Specifically, because the text of the rule includes "joint responsibility" and Comment 7 provides a definition, our joint responsibility analysis focuses on the phrase itself.

¶ 29    Still, Larson emphasizes adequacy of representation and adequate client communication. Both phrases appear in ABA Commission on Ethics and Professional Responsibility, Informal Opinion 85-1514 (1985) (ABA Opinion 85-1514), which discusses the Model Code predecessor provision to Model Rule 1.5(d). *See*

Model Rules of Prof'l Conduct r. 1.5 reporter's explanation of changes (Am. Bar Ass'n 2002), https://perma.cc/EY87-62FK ("The Commission proposes revising the explanation of "joint responsibility" to entail legal responsibility, including financial and ethical responsibility, as if the lawyers were associated in a partnership. This is the interpretation that has been given to the term according to ABA Informal Opinion 85-1514, as well a number of state ethics opinions.").

¶ 30 We take up adequacy of representation in the following financial responsibility and ethical responsibility sections. We need not address client communication because the trial court found that Grinnan "explain[ed] matters to the Kelleys . . . in a way that they were reassured that the case was proceeding appropriately," and Larson does not challenge those findings.

## 2. Joint Responsibility

¶ 31 Recall, Comment 7 treats joint responsibility as involving two components: financial responsibility and ethical responsibility. First addressing financial responsibility and treating the trial court's conclusion as a mixed question of law and fact, we conclude that Grinnan assumed financial responsibility. Second, because

the trial court did not make any findings on ethical responsibility, which is also a mixed question, we further conclude that remand is required. Then, because little authority — and none in Colorado — informs the analysis of ethical responsibility, we identify three criteria that the court should apply in making further findings on remand.

### a. Mixed Question of Law and Fact

¶ 32     The parties dispute how the standard of review should be applied. According to Larson, everything the trial court decided is subject to de novo review because the court interpreted Colo. RPC 1.5(d)(1). *See Nozolino*, ¶ 9. Grinnan responds that whether he assumed joint responsibility for the representation raises a mixed question of law and fact. He is correct.

¶ 33     "A mixed question of law and fact involves the application of a legal standard to a particular set of evidentiary facts in resolving a legal issue." *Atl. Richfield Co. v. Whiting Oil & Gas Corp.*, 2014 CO 16, ¶ 22 (quoting *Mt. Emmons Mineral Co. v. Town of Crested Butte*, 690 P.2d 231, 239 (Colo. 1984)). This standard applies here because we must first consider what joint responsibility means under Colo. RPC 1.5, a legal question. Next, we must consider

14

whether Grinnan complied with the joint responsibility standard, a factual question. Therefore, we will afford "traditional deference to the trial court's extensive findings regarding [the parties'] actions . . . while interpreting [Rule 1.5] independent of the trial court." *See Sheridan Redevelopment Agency v. Knightsbridge Land Co., L.L.C.*, 166 P.3d 259, 262 (Colo. App. 2007).

### b. Grinnan Assumed Financial Responsibility

¶ 34 Whether Grinnan assumed financial responsibility is informed by court decisions and ethics opinions in other jurisdictions. With minor variations, financial responsibility has been equated with the referring lawyer's being subject to joint and several or vicarious liability for the trial specialist's legal malpractice. *See generally* Jennifer F. Zeiglar, Note, *Firm Arrangements, Including Fee-Sharing Agreements, with the Imposition Malpractice Liability*, 24 J. Legal Prof. 537, 545 (2000) ("Although liability pursuant to fee-sharing agreements is relatively new, it is based on the traditional principles of vicarious liability and respondeat superior, both of which are firmly embedded in tort law."). We adopt this interpretation.

¶ 35 Reading Colo. RPC 1.5 and Comment 7 together provides context. Under Rule 1.5(d)(1), fees may be divided between lawyers

15

in different firms only if the division is "in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation."  Comment 7 defines joint responsibility as undertaking both ethical and financial responsibility for the case as if that lawyer and the lawyer to whom he refers the case "were associated in a partnership."  Because neither the Rule nor the Comment defines financial responsibility, we turn to other jurisdictions that have done so.

¶ 36    New York narrows joint responsibility to only financial responsibility:

> This Court's view, therefore, is that joint responsibility is synonymous with joint and several liability.  When lawyers assume "joint responsibility" in order to share a fee under NY-DR § 2-107 without regard to work performed, they are ethically obligated to accept vicarious liability for any act of malpractice that occurs during the course of the representation.

*Aiello v. Adar*, 750 N.Y.S.2d 457, 465 (N.Y. Sup. Ct. 2002).  The court explained that "[a]lthough the harsh financial consequences . . . create a strong incentive for the referring lawyer to keep himself/herself abreast of the manner in which the matter is being

16

handled by the receiving lawyer, the rule does not create an ethical obligation to supervise the receiving attorney's work." *Id.*

¶ 37     Illinois takes a similar approach. *See* Ill. Jud. Ethics Comm., Op. 1994-16 (1994), https://perma.cc/3QD9-AF9L ("The Committee believes that such legal responsibility consists solely of potential financial responsibility for any malpractice action against the recipient of the referral."). So do Arizona and Florida. *See* Ariz. Comm. on Rules of Prof'l Conduct, State Bar Ethics Op. 04-02 (2004), https://perma.cc/VW8M-Z25B ("[T]he requisite 'joint responsibility' exists if the referring attorney assumes financial responsibility for any malpractice that occurs during the course of the representation."); *Noris v. Silver*, 701 So. 2d 1238, 1240 (Fla. Dist. Ct. App. 1997) ("Therefore, if Silver and Falk agreed to divide the attorney's fee [by assuming joint responsibility], Silver would be liable for the malpractice committed by Falk."). In Wisconsin, financial responsibility as if the lawyers were associated in a partnership means the referring lawyer's assumption of vicarious liability for the representation, as well as responsibility for costs. Wis. State Bar Comm. on Prof'l Ethics, Ethics Op. E-00-01 (2000),

https://perma.cc/C4XB-EAQ2 (hereinafter Wis. Ethics Op. E-00-01).

¶ 38 That "financial . . . responsibility . . . as if . . . associated in a partnership," Colo. RPC 1.5 cmt. 7, equates to the referring lawyer's vicarious liability for malpractice is illustrated in *Duggins v. Guardianship of Washington Through Huntley*, 632 So. 2d 420 (Miss. 1993). There, the court concluded that when one lawyer is associated with another, although they are not in the same law firm, principles of partnership and joint venture give rise to vicarious liability. *Id.* at 428-29. It explained that such an association may result in a "relationship [that] can be described as a joint venture, at the least." *Id.* at 427; *accord Phillips v. Joyce*, 523 N.E.2d 933, 941 (Ill. App. Ct. 1988) (stating it was reasonable to conclude that division of contingent fee between lawyer handling pretrial work and lawyer handling trial work was joint venture).

¶ 39 These cases are well reasoned. Also, their approach finds some support in Colorado. *See Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 998 P.2d 475, 477 (Colo. App. 2000) (concluding that where a law firm and a construction consulting firm entered into a

joint venture agreement, the consulting firm was liable for damages flowing from the law firm's legal malpractice).

¶ 40     In addition, commentators and ethics opinions suggest that sound policy supports allowing a fee division disproportionate to the work performed in exchange for greater financial protection of the client through joint and several or vicarious liability.  *See, e.g.*, N.Y. Cty. Lawyers' Ass'n, Comm. on Prof'l Ethics, Ethics Op. 715, at 5 (1996), https://perma.cc/Q8UM-JQNF ("[J]oint responsibility . . . [i]s intended to *add* to the protection otherwise available to the client . . . .  Since a lawyer is liable for his or her own failure to exercise due care, the writing given to the client must create some additional vicarious liability on the part of the referring lawyer in order to satisfy [the New York Code]."); Sheryl Zeligson, *The Referral Fee and the ABA Rules of Model Conduct: Should States Adopt Model Rule 1.5(e)?*, 15 Fordham Urb. L.J. 801, 818 (1986) ("The increased liability associated with the Model Rule, however, will provide the incentive for attorneys to refer their clients to the person who will most competently handle the case."); *cf.* Wis. Ethics Op. E-00-01 ("It must be remembered that in such a [joint responsibility] referral arrangement, the referring lawyer still maintains an attorney-client

relationship with the client. It is the ongoing protection of the client's interests by the referring lawyer that justifies the referring lawyer receiving a fee that is beyond the proportion of the services actually provided by that lawyer.").

¶ 41 The statement in ABA Opinion 85-1514, on which Larson relies — that joint responsibility includes a "responsibility to assure adequacy of representation . . . that a partner would have for a matter handled by another partner" — does not persuade us to include supervision by the referring lawyer in the financial responsibility calculus. Note, the opinion refers to partners in the same firm. And the vicarious liability of one partner for the negligence of another partner in actions concerning the partnership's affairs does not arise from lack of supervision. Instead, "each participant in a joint venture is vicariously liable for the negligence of the other participants." *Am. Family Mut. Ins. Co. v. AN/CF Acquisition Corp.*, 2015 COA 129, ¶ 9.

¶ 42 Therefore, we adopt the joint and several or vicarious liability test for financial responsibility. Next, we turn to the law of partnership and joint ventures to determine whether Grinnan assumed financial responsibility.

¶ 43    To begin, the trial court held:

> Had a malpractice claim against Mr. Larson
> been initiated, Mr. Grinnan, despite his
> friendship with Mr. Kelley, would likely have
> been named as a defendant by the Kelley's
> malpractice lawyer. By subjecting himself to
> potential malpractice liability, Mr. Grinnan
> was accepting responsibility for representation
> in the case.

¶ 44    Larson does not dispute this holding. Rather, he asserts that because a referring lawyer would always be liable for negligence in choosing the lawyer to whom the case was referred, it sets the bar too low. Ultimately, our conclusion aligns with the trial court's. Yet, the court's somewhat oblique language, "would likely have been named as a defendant," coupled with Larson's low bar assertion, demand further analysis.

¶ 45    Because a joint venture is a partnership formed for a limited purpose, the substantive law of partnership must be applied in determining whether a joint venture exists. *Batterman v. Wells Fargo Ag Credit Corp.*, 802 P.2d 1112, 1117 (Colo. App. 1990). "A joint venture exists when there is: (1) a joint interest in property; (2) an express or implied agreement to share in profits or losses of the venture; and (3) actions and conduct showing joint cooperation in

21

the venture."  *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 619 (Colo. 1999) (quoting *City of Englewood v. Commercial Union Assur. Cos.*, 940 P.2d 948, 957 (Colo. App. 1996)).

¶ 46    Since the trial court did not follow this path, normally the next step would be a remand for further findings.  *See, e.g., Dempsey v. Denver Police Dep't*, 2015 COA 67, ¶ 19 ("We agree that the record does not clearly demonstrate that the trial court made a finding as to whether Officer Jossi was exceeding the lawful speed limit at the relevant time and, thus, we remand for further findings.").  But not always.  An exception exists because if the "relevant facts are undisputed and complete, remand to the district court would only further delay the ultimate disposition."  *TABOR Found. v. Reg'l Transp. Dist.*, 2016 COA 102, ¶ 39 (citation omitted) (*cert. granted in part*, Jan. 23, 2017).  On this record, the exception applies.

¶ 47    As in *Duggins* and *Phillips*, both Larson and Grinnan had a joint interest in successfully prosecuting the Kelley case; their profit would depend on the degree of their success.  The fee agreement reflected that Grinnan was "associated" with Larson and that both he and Larson would share in the contingent fee.  While the trial

court found that their roles differed, both of them cooperated in bringing the case.

¶ 48 Despite these undisputed facts, Larson argues that because Grinnan never agreed to be jointly and severally liable for costs, he failed to assume financial responsibility. True, only Larson obligated himself to pay costs. And on this basis, Larson challenges the trial court's finding that when Grinnan accepted a lower fee division from the first settlement, which Grinnan testified was to help defray significant costs already incurred by Larson, Grinnan assumed financial responsibility.

¶ 49 Recall, Wisconsin considers whether a referring lawyer assumes responsibility for costs, but observes that allocation of costs is not dispositive. Wis. Ethics Op. E-00-01 (noting that assumption of financial responsibility for costs "may be secondary to the financial responsibility assumed by the lawyer to whom the matter was referred"). We agree that a referring lawyer's responsibility for costs is at most one possible indicator the lawyer cooperated in the joint venue. *See Compass Ins. Co.*, 984 P.2d at 619 (reiterating that third prong of joint liability test is "actions and conduct showing joint cooperation in the venture"). And we decline

to attach much weight to responsibility for costs because whether such joint responsibility significantly advances the overarching purpose of the Rules of Professional Conduct to protect clients, *see Mercantile Adjustment Bureau, L.L.C.*, ¶ 15, is questionable. After all, the referring lawyer's joint responsibility for costs in a contingency fee arrangement primarily protects third parties, who can look to a pocket other than that of the trial specialist.

¶ 50 In the end, we need not address Larson's costs argument any further because the undisputed evidence shows that Grinnan and Larson entered into a joint venture for the purposes of representing the Kelleys and sharing in the fee. From that arrangement flows vicarious malpractice liability. Therefore, we further conclude that Grinnan assumed financial responsibility for the case.

c. Remand is Required as to Ethical Responsibility

¶ 51 The conclusion that financial responsibility can be determined from a referring lawyer's exposure to liability for malpractice of the lawyer to whom the case was referred rests on common law principles of vicarious and joint and several liability. But one does not usually think of ethics and professional discipline in these terms. So, do the same principles guide inquiry into ethical

responsibility in terms of a referring lawyer's exposure to professional discipline for unethical conduct of the lawyer to whom the case was referred?

¶ 52    No.  The Rules of Professional Conduct are "designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies.  They are not designed to be a basis for civil liability."  Colo. RPC Preamble ¶ 20.  And ethical responsibilities primarily arise from court rules not common law principles.

¶ 53    As discussed, Comment 7 to Colo. RPC 1.5 provides that "joint responsibility . . . entails . . . ethical responsibility for the representation as if the lawyers were associated in a partnership."  But what constitutes assuming ethical responsibility for a case one lawyer refers to another?  Answering this question is confounded because Comment 7 does not define ethical responsibility, very limited authority exists, and the few jurisdictions to have weighed in disagree on whether, and to what extent, joint responsibility requires a lawyer to ensure ethical responsibility, once that lawyer has referred a case to another lawyer.  Broadly speaking, two

standards have emerged: one requires the lawyer have some involvement in the case; the other requires minimal or no action.

¶ 54    Wisconsin and Ohio have adopted the broader standard. In Wisconsin, a referring lawyer must "remain sufficiently aware of the performance of the lawyer to whom the matter was referred to ascertain if that lawyer's handling of the matter conforms to the Rules of Professional Conduct" by "periodically reviewing the status of the matter with that lawyer, the client, or both." Wis. Ethics Op. E-00-01. This requirement implicates "being available to the client regarding any concerns of the client that the lawyer to whom the matter has been referred is handling the matter in conformity with the Rules." *Id.* In other words, the referring lawyer must at least continue to be available to act on the client's behalf and to provide independent professional judgment. *Id.* Similarly, Ohio Rule of Professional Conduct 1.5(e) provides that to receive a fee division disproportionate to the services he or she provides, a referring lawyer must assume joint responsibility and agree to be available for consultation with the client.

¶ 55    Turning to the minimalist standard, New York limits joint responsibility to joint and several financial responsibility, with one

court noting that joint responsibility "does not create an ethical obligation of the referring lawyer to supervise the activities of the receiving lawyer." *Aiello*, 750 N.Y.S.2d at 464-65 (citation omitted). The court explained that such a limitation is "the more pragmatic approach . . . . [I]t does not make much pragmatic sense that a lawyer would be expected to supervise the handling of a matter by a specialist, who is more familiar with the case and generally more competent in the type of action involved than the referring attorney." *Id.* at 465.

¶ 56     A similar sentiment appears in Arizona State Bar Ethics Opinion 04-02: "It also would be somewhat illogical to require a referring attorney to 'supervise' the handling of a matter by another attorney believed to be more experienced or capable in a particular area." True, Arizona's version of Rule 1.5 does not include language requiring the referring lawyer to accept responsibility as if the lawyers were associated in a partnership. Ariz. RPC ER 1.5. Even so, Opinion 04-02's recognition of the challenges presented by requiring a referring lawyer to supervise a specialist echoes Comment 7 to Colo. RPC 1.5:

> A division of fee facilitates association of more than one lawyer in a matter in which neither alone could serve the client as well, and most often is used when the fee is contingent and the division is between a referring lawyer and a trial specialist.

¶ 57     At first blush, these pragmatic considerations are alluring. But fully embracing the minimalist view would ignore Comment 7, which explicitly requires assumption of ethical responsibility. While the comments are only "intended as guides to interpretation," Colo. RPC Preamble ¶ 21, that limitation is not a license to ignore them entirely. And as relevant here, consistent with this interpretative function, Comment 7 defines "joint responsibility" to include ethical responsibility. But a closer look at Comment 7 and its history shows that in this context, and contrary to Larson's assertion, ethical responsibility of the referring lawyer does not entail assuming a supervising lawyer's ethical obligations.

¶ 58     Take the history first. When the ABA revised Model Rule 1.5 in 2002, the revisers recognized the difficulty in holding a referring lawyer to the ethical standards of a supervising lawyer and removed the cross-reference to Rule 5.1 (Responsibility of a Partner or Supervisory Attorney) from the comment. *See* ABA Comm'n on

Evaluation of Rules of Prof'l Conduct, Minutes from Meeting in Atlanta, Ga. § X (Aug. 6-8, 1999), https://perma.cc/XL2C-QDYC ("A member asked why the reference to Rule 5.1 was deleted in Comment [5]. The Reporter responded that since there is not a supervisory relationship between the lawyers in the joint representation, Rule 5.1 is not applicable."). The Model Rule was revised to include language that had been used in ABA Opinion 85-1514.

¶ 59     Then consider "as if the lawyers were associated in a partnership," which appears in Comment 7 to Colo. RPC 1.5, just as in the ABA Model Rule. Neither Colo. RPC 1.5 nor any of its comments tell us what this phrase means. But while the Colorado version of this comment has never included the cross-reference to Colo. RPC 5.1, only Colo. RPC 5.1(a) and (c) spell out the ethical obligations — as opposed to the vicarious liability — of a partner in a law firm:

> (a) A partner in a law firm, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm, shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in

the firm conform to the Rules of Professional Conduct.

. . . .

(c) A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if:

> (1) the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved;

> (2) the lawyer is a partner or has comparable managerial authority in the law firm in which the other lawyer practices, or has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

And these responsibilities can be reconciled with the pragmatic consideration that because clients usually benefit from referrals to lawyers with particular expertise, the process should not unduly burden the referring lawyer. *See generally* Curtis L. Cornett, Comment, *Ohio Disciplinary Rule 2-107: A Practical Solution to the Referral Fee Dilemma*, 61 U. Cin. L. Rev. 239, 256 (1992) (ABA Model Rule 1.5(e) "allows small practitioners to receive some type of compensation for their referrals and, in addition, encourages them to refer clients to more specialized and more competent attorneys.").

¶ 60    As applied to a referring lawyer, paragraph (a) of Colo. RPC 5.1 would require that the referring lawyer only "make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance." "Reasonable" does not guarantee an outcome; it "denotes the conduct of a reasonably prudent and competent lawyer." Colo. RPC 1.0(h). Comment 3 to Colo. RPC 5.1 further dilutes the burden by clarifying that the required measures "can depend on the firm's structure and the nature of its practice." Thus, paragraph (a) of Colo. RPC 5.1 does not expose the referring lawyer to professional discipline based solely on unethical conduct of another lawyer.

¶ 61    Nor does paragraph (c) impose an undue burden on a referring lawyer. Because the referring lawyer is outside the receiving lawyer's firm, "reasonable efforts" for a referring attorney is necessarily a lower bar than what Rule 5.1(a) would require from a partner inside that firm. Otherwise, why would a referring lawyer who directs or ratifies unethical conduct — or who turns a blind eye toward such conduct rather than take remedial action, while adverse consequences could still be avoided — not be subject to professional discipline, as would any other similarly situated

lawyer?  This paragraph, too, does not make the referring lawyer vicariously accountable for unethical conduct of another lawyer, absent the referring lawyer's complicity.

¶ 62    Thus, the referring lawyer's obligations under either of these paragraphs stop far short of the obligations that Rule 5.1(b) imposes on supervising lawyers: "A lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Rules of Professional Conduct."[2]

¶ 63    But exactly what must that referring lawyer do to assume ethical responsibility?  In our view, an approach like that adopted in Wisconsin — which requires that a referring lawyer only stay abreast of the progress of the matter and be available to address any of the client's ethical concerns — is necessary but not always sufficient to establish "reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance" of compliance with

---

[2] This aspect of our discussion is a purely hypothetical analysis.  No one has suggested that Larson violated the rules of professional conduct in his representation of the Kelleys.  To the contrary, the record shows that after a long and hard fight, he obtained favorable settlements.

the Rules. To be sure, the referring lawyer's staying sufficiently abreast of the progress of the case to advise the client might encompass the "reasonable efforts" mandate of Colo. RPC 5.1(b). Yet, because it also might not, a case-by-case inquiry is essential.

¶ 64     The same picture comes into focus through the lens of "responsibility to assure adequacy of representation" under ABA Opinion 85-1514. In the ethical context, some types of professional misconduct could harm the client who had been referred. For example, Colo. RPC 1.3 requires "reasonable diligence and promptness." So, assuring adequacy of representation would require some awareness of "measures giving reasonable assurance" of ethical compliance.

¶ 65     Undaunted, Grinnan asserts that he assumed ethical responsibility for the case merely by representing the Kelleys. While correct, this assertion only gets Grinnan half way. It ignores Colo. RPC 1.5 Comment 7's use of "joint" to modify "ethical responsibility." Thus, the inquiry returns to the referring lawyer's assuming responsibility for the actions of the trial specialist.

¶ 66     In sum, the more balanced view requires that to assume ethical responsibility, the referring lawyer must:

- actively monitor the progress of the case;

- "make reasonable efforts to ensure that the firm [of the lawyer to whom the case was referred] has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct," Colo. RPC 5.1(a); and

- remain available to the client to discuss the case and provide independent judgment as to any concerns the client may have that the lawyer to whom the case was referred is acting in conformity with the Rules of Professional Conduct.

¶ 67 For reasons known only to the trial court, it made no findings as to whether Grinnan assumed ethical responsibility for the Kelley case. The record does not expressly indicate that Grinnan assumed ethical responsibility. But whether that would be a fair inference to draw from his interaction with Larson and extensive communications with Mr. Kelley is within the province of the trial court. *See Target Corp. v. Prestige Maint. USA, Ltd.*, 2013 COA 12, ¶ 24 ("It is the trial court's sole province to resolve disputed factual issues and to determine witnesses' credibility, the weight to accord testimony, and the inferences to be drawn from the evidence.").

Additionally, the court did not have the benefit of the standard that we have adopted.

¶ 68    Therefore, we remand the case to the trial court to determine whether Grinnan assumed ethical responsibility, applying the three-part test we have articulated. *See Dempsey*, ¶ 19. The court shall make further findings on the existing record. If the court finds that Grinnan assumed ethical responsibility, then the court's fee award stands, subject to an appeal by Larson.[3] But if the court finds that Grinnan did not assume ethical responsibility, then he is only entitled to fees in proportion to the services he performed, with the referral fees to be reallocated to Larson, subject to an appeal by Grinnan.

---

[3] At oral argument, Larson asserted that under a theory of quantum meruit, Grinnan may only recover an hourly rate for the services provided. But neither case Larson relied on supports this proposition. *See Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*, 2012 CO 61, ¶¶ 19-30 (holding that an attorney may recover the reasonable value of services provided to former co-counsel under a theory of quantum meruit); *Law Offices of J.E. Losavio, Jr. v. Law Firm of Michael W. McDivitt, P.C.*, 865 P.2d 934, 937 (Colo. App. 1993) (allowing division of contingent fee but remanding for further factual findings). In any event, Larson did not assert this argument in his briefs, and therefore we do not consider it. *See Qwest Corp. v. Colo. Div. of Prop. Taxation*, 310 P.3d 113, 125 (Colo. App. 2011) (declining to address assertion first made at oral argument).

CROSS-APPEAL

III. The Propriety of the Trial Court's Drawing on "Its Experience both in Private Practice and on the Bench" Is Not Properly Before Us

¶ 69    On cross-appeal, Grinnan does not assert that the trial court's fee allocation was clearly erroneous. Instead, he challenges the allocation because the court relied on its personal experience rather than accepting the allocation proposed by his expert. But Grinnan did not preserve this issue.

¶ 70    Civil cases too numerous to cite say that "issues not raised in or decided by a lower court will not be addressed for the first time on appeal." *See, e.g., Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1008-09 (Colo. 2008). Under C.A.R. 1(d), however, "appellate courts also have the discretion to notice any error appearing of record, whether or not a party preserved its right to raise or discuss the error on appeal." *Id.* at 1008. That said, failure to object usually means that the issue will not be considered on appeal. *See, e.g., Murray v. Just In Case Bus. Lighthouse, LLC*, 2016 CO 47M, ¶ 30 n.7 ("We agree with the court of appeals that Murray failed to preserve this issue for appeal because he did not object to Sumner's testimony on this basis at trial.").

¶ 71    Applying these familiar principles, we first conclude that

Grinnan failed to preserve an objection to the trial court's reliance

on its personal experience.  Next, we discern no reason to exercise

our discretion and take up this unpreserved issue.

### A.  Lack of Preservation

¶ 72    At the December 1, 2015, hearing, and before taking further

testimony, counsel and the trial court discussed several procedural

issues.  Before taking further testimony, the court told counsel:

> And if the parties are okay, I can take judicial
> notice of the fact that I also have tried
> explosion cases in a previous life, I have pieces
> of a bomb on my desk, actually, where I spent
> one year of my life working on one case solely.
> So I know how much work these things are.  It
> was a little different, it was in the criminal
> context, but I was the only attorney and it was
> incredibly difficult to get the thing together, get
> it ready, and then I actually took it all the way
> through trial.  So if that helps people
> remembering that and viewing what I saw in
> the case in terms of everything that was filed
> and everything that was done, I'm certainly
> willing to take judicial notice of all that, too, so
> — but you don't have to agree to anything.

Larson's attorney replied, "I understand."  Grinnan's attorney

moved on to another procedural issue.

¶ 73    Grinnan does not identify any point during the hearing — or, for that matter, any point before the court ruled — where his attorney expressed concern over the court's reference to taking "judicial notice" of its personal experience.  *See* C.A.R. 28(a)(7)(A) (Arguments must include "whether the issue was preserved, and if preserved, the precise location in the record where the issue was raised and where the court ruled.").  Instead, Grinnan responds that "such an objection would have been futile and thus unnecessary to preserve the issue."[4]  His response misses the mark in three ways.

¶ 74    First, according to Grinnan, "the [trial] court simply could not have taken judicial notice of his personal experience."  Under CRE

---

[4] According to Grinnan's reply brief: "Thus, Grinnan did preserve the issue by the steps he took by filing his motions after judgment." However, he provides no record citation.  *See* C.A.R. 28(a)(7)(A) (requiring, for preserved issues, "the precise location in the record where the issue was raised"); *Shiplet v. Colo. Dep't of Revenue*, 266 P.3d 408, 412 (Colo. App. 2011) ("However, Shiplet has failed to indicate where he raised the issue of ADA compliance at his hearing below.  We therefore decline to reach this issue."); *O'Quinn v. Baca*, 250 P.3d 629, 632 (Colo. App. 2010) (noting that the court is under no obligation to search the record to determine whether an issue was raised and resolved, and that "parties 'should not expect the court to peruse the record without the help of pinpoint citations'." (quoting *L.S.F. Transp., Inc. v. Nat'l Labor Relations Bd.*, 282 F.3d 972, 975 n.1 (7th Cir. 2002))).

201(b), he may be correct. But the language from this rule that he cites on appeal — "[a] judicially noticed fact must be one not subject to reasonable dispute" — affords ample reason why his counsel should have raised a contemporaneous objection. *See Uptain v. Huntington Lab, Inc.*, 723 P.2d 1322, 1330 (Colo. 1986) (The primary purposes of the contemporaneous objection rule is "to permit the trial court to accurately evaluate the legal issues and to enable the appellate court to apprehend the basis of the objection.").

¶ 75    Second, Grinnan asserts that "the [trial] court did not take judicial notice of the specific facts it intended to use." But the trial court's statement — "I know how much work these things are" — belies this assertion. In apportioning the fee, "how much work these things are" would be relevant. And in any event, Grinnan's counsel could have asked the court about what additional facts it contemplated judicially noticing. For example, counsel could have asked the court — as Grinnan proposes in his cross-reply brief — "whether the law or jurisdictions were similar." Why he did not do so remains unexplained.

¶ 76    Third, Grinnan questions holding that a party waives appellate review "simply by not objecting to a judge's toss-away comment." But the "toss-away" characterization rings hollow because the court expressly referred to "tak[ing] judicial notice." And as Grinnan argues in his first point, judicial notice is a formal process, limited by CRE 201(b) and interpreted by many Colorado cases, several of which Grinnan cites.

¶ 77    In sum, this issue was not preserved.

## B.  Discretionary Review

¶ 78    Not easily deterred, Grinnan asserts that even if the issue was not preserved, this court should exercise discretion and take it up. But Grinnan argues only that we should do so "in light of the prejudicial errors that occurred in the [trial] court as further explained below and in Grinnan's Opening-Answer Brief." This argument ignores the larger point.

¶ 79    Grinnan cites no authority — nor are we aware of any in Colorado — holding that other preserved errors give an appellate court license to ignore the contemporaneous objection requirement as to an unpreserved error. And to the extent that Grinnan's argument implies a nexus between other preserved errors and this

unpreserved error, "[t]he doctrine of cumulative error, although applied regularly in criminal appeals, has not been extended to civil cases." *Acierno By & Through Acierno v. Garyfallou*, 2016 COA 91, ¶ 66.

¶ 80    For all of these reasons, we decline to take up the judicially noticed personal experience issue.

### IV. The Trial Court Did Not Err in Awarding Prejudgment Interest to Larson on the Basis of Grinnan's Wrongful Withholding

¶ 81    After Grinnan filed an attorney's lien, Larson proposed that thirty-five percent of the attorney fees be put in escrow until the dispute was resolved. This proposal would give Larson access to sixty-five percent of the fees. Grinnan disagreed, explaining:

> In this instance all attorney's fees are in dispute and thus they all must be placed in trust or escrow until the dispute is resolved. . . . The fee agreement in this matter provides that Mr. Grinnan "shall be paid a percentage of the firm's fee, not to exceed 100%." Thus, at this time and until this matter is resolved (either through an agreement between the parties or through litigation), all attorney's fees are in dispute.

Following extensive argument, the trial court held:

> No attorney's fees to any attorney shall be paid from the settlement unless the parties stipulate to doing so. All remaining funds

41

shall be placed by Mr. Larson into a separate interest-bearing account. The funds in the interest-bearing account shall remain in the account until further order of the Court.

¶ 82 After the court entered its order allocating the attorney fees, both parties moved for prejudgment interest under section 5-12-102(1)(a). As relevant here, Larson argued that he was entitled to prejudgment interest because he had been "deprived of the use his portion of the undisputed amounts." Grinnan responded that that he did not wrongfully withhold Larson's portion of the attorney fees because he lacked control over them; rather, Lawson had deposited them into a restricted account, as the trial court had ordered.

¶ 83 The trial court agreed with Larson:

> The Court, in its previous order regarding attorney's fees, found and continues to find that Mr. Grinnan provided a very limited amount of services to the plaintiffs in this case. Mr. Grinnan's claims for attorney's fees are far in excess of what any reasonable attorney would demand based upon the limited amount of work he performed on the case. At the start of this dispute, the Court granted Mr. Grinnan's request that all the attorney's fees in this case be placed in a restricted interest bearing account. The demand by Mr. Grinnan that 100% of the fees be placed in a restricted account was, as a

practical matter a wrongful withholding of money from Mr. Larson entitling Mr. Larson to receive interest pursuant to CRS 5-12-102.

## A. Standard of Review and Law

¶ 84 An appellate court reviews the trial court's interpretation of a statute de novo and its findings of fact for clear error. *See Semler,* ¶ 19; *Hoskins,* ¶ 17.

¶ 85 Section 5-12-102(1)(a) provides a statutory rate of interest for money or property wrongfully withheld. "[W]rongfully withheld," as used in section 5-12-102(1), means an aggrieved party is deprived of the use of money to which the party was otherwise entitled. *See Goodyear Tire & Rubber Co. v. Holmes*, 193 P.3d 821, 825 (Colo. 2008).

¶ 86 As a result of a wrongful withholding, the aggrieved party suffers a loss, frequently termed the "time value of money." *Id.* at 826; *see Mesa Sand & Gravel Co. v. Landfill, Inc.*, 776 P.2d 362, 364 (Colo. 1989). This lost value is caused by inflation, reducing the value of money over time, and by the aggrieved party's inability, due to the withholding, to earn any return. *Goodyear Tire,* 193 P.3d at 826.

¶ 87     Even so, wrongful withholding does not require tortious or bad faith conduct.  *Benham v. Mfrs. & Wholesalers Indem. Exch.*, 685 P.2d 249, 254 (Colo. App. 1984).  Instead, courts have given this term "a broad, liberal construction" that focuses on "whether money or property was wrongfully withheld from the nonbreaching party and not whether the nature of the conduct of the breaching party brings him or her within the ambit of the statute."  *Rodgers v. Colo. Dep't of Human Servs.*, 39 P.3d 1232, 1237-38 (Colo. App. 2001).

## B.  Analysis

¶ 88     Grinnan contends the trial court erred in finding a wrongful withholding under section 5-12-102 because until the court allocated the fees, "neither party knew how much of the attorney fees Mr. Larson and Mr. Grinnan would receive."  Thus, he continues, filing an attorney's lien against all the fees and urging that they be placed in a restricted account could not have constituted a wrongful withholding.

¶ 89     True, how the attorney fees would be allocated was unknown at the time Grinnan filed the attorney's lien and later when he requested that the fees be placed in a restricted account.  But "an attorney's lien which misstates facts and is utilized to overreach

44

and to force payment of more than is owed cannot be tolerated." *People v. Radinsky*, 182 Colo. 259, 261, 512 P.2d 627, 628 (1973). And under Colo. RPC 1.15A(c), only "the portion [of the attorney fees] in dispute" was required to be kept in a separate account until the dispute resolved.

¶ 90 The trial court found that Grinnan's request to put all the fees into a restricted account far exceeded "what any reasonable attorney would demand based upon the limited amount of work he performed on the case." Grinnan does not challenge this finding as clearly erroneous, nor could he. He testified during the attorney fees hearing that his compensation should be "somewhere from the middle of the difference between the 25 percent and one-third . . . towards the 25 percent." His expert offered a similar opinion as to customary fees splits between a referring attorney and a trial specialist in Colorado.

¶ 91 Yet, by filing an attorney's lien against all the fees and then requesting that the court place them "in trust or escrow until this dispute is resolved," Grinnan deprived Larson of the use of money to which only he was entitled. These actions establish a wrongful withholding under section 5-12-102(1)(a).

¶ 92    Despite his undisputed actions, now Grinnan emphasizes that he did not wrongfully withhold the attorney fees because they were placed into a restricted account based on the court's order.  But to be clear, the court ordered that no "fees to any attorney shall be paid from the settlement *unless the parties stipulate to doing so.*"  Thus, Grinnan could have stipulated to disbursing to Larson from the settlement the portion of fees beyond Grinnan's claim.  In any event, and as a matter of law, the trial court's order does not shield Grinnan.

¶ 93    A similar argument was rejected in *Rodgers*, where the division awarded interest under section 5-12-102 on back pay that a state employee had been required to return when the back pay award was reversed on appeal.  39 P.3d at 1238.  The division explained that the employee was, "in effect, the breaching party because he demanded and received money from [the state] that a division of this court determined he was not entitled to receive."  *Id.*  And because he "was never entitled to the money . . . he has been wrongfully withholding it since the time he received it."  *Id.*

¶ 94    In so holding, the division rejected the employee's argument "that he could not have been wrongfully withholding the money

46

because he received it pursuant to the [State Personnel] Board's order." *Id.* The division explained that this "argument fails because it only views the situation from the perspective of [employee's] conduct and does not take into account the harm suffered by [the state]." *Id.* The same is true here.

¶ 95 Finally, Grinnan asserts that he could not have wrongfully withheld the fees because he never had control over the restricted account. But at Grinnan's urging, the trial court ordered that the attorney fees be placed in a restricted account. And once Grinnan filed an attorney's lien against all of the fees, Larson was deprived of their use.

¶ 96 Thus, we conclude the trial court properly awarded Larson prejudgment interest.

## V. The Trial Court May Reconsider Its Ruling on Costs

¶ 97 Both parties sought costs under C.R.C.P. 54(d), which provides: "Except when express provision therefor is made either in a statute of this state or in these rules, reasonable costs shall be allowed as of course to the prevailing party . . . ." The trial court denied the requests. It concluded that "it did not rule in favor of

either of the attorneys and finds that neither was the prevailing party."

¶ 98 "Determining the reasonableness and necessity of costs is within the trial court's discretion and will vary on a case-by-case basis." *In re Estate of Fritzler*, 2017 COA 4, ¶ 40. Given our remand, after the trial court makes further findings on joint ethical responsibility, the court may reconsider its costs ruling and, if appropriate, modify it.

## VI. Conclusion

¶ 99 The attorney fee award is vacated, the cross-appealed rulings are affirmed, and the case is remanded for additional proceedings consistent with this opinion.

JUDGE BOORAS and JUDGE FREYRE concur.